# Exhibit 19

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


PIONEER BUSINESS SERVICES, LLC, : Docket #
                                  1:22-cv-06206-ALC-BCM
                     Plaintiff,   :

     -against-                    :

VISTAJET US, INC.,               : New York, New York
                                   February 21, 2023
                     Defendant.

--------------------------------:

                    PROCEEDINGS BEFORE
             THE HONORABLE BARBARA C. MOSES
             UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For Plaintiff:        AKERMAN, LLP
                      BY:  H. PETER HAVELES, JR, ESQ.
                          LISA M. COYLE, ESQ.
                      1251 Avenue of the Americas
                      37th Floor
                      New York, New York 10020


For Defendant:        AXS LAW GROUP PLLC
                      BY:  JEFFREY W. GUTCHESS, ESQ.
                          JOANNA NIWOROWSKI, ESQ.
                      2121 NW 2nd Avenue, Suite 201
                      Miami, Florida 33127



Transcription Service: Marissa Mignano Transcription
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com



Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

```
 1
 2            THE DEPUTY CLERK:  The Court now calls
 3   Pioneer Business Services, LLC versus VistaJet US,
 4   Inc, case number 22-CV-6206.
 5            Counsel, please make your appearances for
 6   the record.
 7            MR. HAVELES:  Your Honor, Peter Haveles of
 8   Akerman, LLP on behalf of plaintiff.
 9            THE COURT:  Good morning.
10            MR. HAVELES:  Good morning, Your Honor.
11            MS. COYLE:  Good morning, Your Honor.  Lisa
12   Coyle, Ackerman, LLP, on behalf of plaintiff as
13   well.
14            THE COURT:  Good morning.  So that's Mr.
15   Haveles and Ms. Coyle for the plaintiff, and
16   counterclaim defendant.
17            And for the defendant and counterclaim
18   plaintiff.
19            MR. GUTCHESS:  Good morning, Your Honor.
20   Jeff Gutchess and Joanna Niworowski for VistaJet.
21            THE COURT:  And Mr. Gutchess, Ms.
22   Niworowski, good morning.
23            All right.  So we're here today for a
24   discovery dispute, and also this is our slightly
25   delayed prescheduled status conference.
```

1          Let me begin with a little bit of a bigger

2     picture question, which is related to the discovery

3     dispute.  Mr. Gutchess, the deadline for expert

4     reports, except for reports devoted solely to

5     rebutting the other side's expert, was a couple of

6     weeks ago.  I understand you didn't serve one.  Is

7     that right?

8          MR. GUTCHESS:  Correct.

9          THE COURT:  How are you going to establish

10    your damages on your counterclaim?

11         MR. GUTCHESS:  Your Honor, the damages as

12    to the IP claims, the trademark and the copyright,

13    they generally go into lost profits from sales used

14    by the trademarks improperly.  And in here, the

15    plaintiff, FCA, was unable to basically complete any

16    sales.  So we're left in a situation where we

17    believe there's a clear infringement, but we don't

18    believe there's any significant damages to seek on

19    the trademark and copyright claims.

20         THE COURT:  And that's why you don't have

21    an expert report quantifying those damages?

22         MR. GUTCHESS:  Correct.

23         THE COURT:  So don't you need to do

24    something about your interrogatory answer?  Don't

25    you need to update it?

```
 1              MR. GUTCHESS:  We would be happy to do
 2     that, Your Honor.  I do think it's probably
 3     appropriate to do so.  And that goes to the
 4     broader -- you know, the breach of contract damages
 5     as well.  One of the things we said in our
 6     interrogatory responses was with the main form of
 7     likely damages being customers that did not renew,
 8     we don't really have a way of knowing why they don't
 9     always renew.  And so it's hard to tell whether
10     there's true damages or not, or true causation or
11     not.  And that renewal period runs over a year or
12     so, and so they still could be accruing.
13              As of today, we don't really -- we haven't
14     really been able to identify any particular customer
15     that we can say, well, the nonrenewals did go up.
16     We haven't yet been able to identify any customers
17     that did not renew specifically because of FCA's
18     disclosures.  And so --
19              THE COURT:  So you don't have any contract
20     damages either?
21              MR. GUTCHESS:  Well, we have undefined
22     damages at this point that are difficult to prove,
23     which is related to the liquidated damages clause in
24     the contract.
25              THE COURT:  Okay.  I think what you're
```

1    telling me, you're stepping up to it a little bit
2    gingerly, is that that's all you got, right, the
3    liquidated damages clause?
4           MR. GUTCHESS:  Exactly.  That's what it's
5    looking like, yes.
6           THE COURT:  Okay.
7           MR. GUTCHESS:  I don't see that changing.
8    If it were to change, if we were to learn of any
9    customer who actually we could actually establish
10   causation, we would disclose that immediately.  But
11   I do not -- you know, it hasn't happened yet, so
12   it's probably unlikely to happen.
13          THE COURT:  In your interrogatory answer,
14   I'm referring to your answer to interrogatory number
15   1, which was intended to be Exhibit B to your
16   opponent's letter motion at docket 97, but which
17   inadvertently, I expect, was not attached.  But we
18   got it a few minutes ago, so I now have it.
19          You're going to go ahead, Mr. Haveles, if
20   you haven't done it already, and put Exhibits A and
21   B on the docket where they belong.
22          MR. HAVELES:  I believe Ms. Coyle was doing
23   the e-filing just before we started the conference,
24   Your Honor.  Yes.
25          THE COURT:  Okay.

```
 1    renewal and said, look, these rates are much lower
 2    than your current rates.  These are 12,000 versus
 3    17,000.  And if those customers would have --
 4              THE COURT:  Is that, like, per hour?
 5              MR. GUTCHESS:  Yes, per hour.
 6              THE COURT:  Oh, my gosh.  I live in a
 7    different universe.
 8              MR. HAVELES:  We all do, Your Honor.
 9              MR. GUTCHESS:  Crazy.  But those customers,
10    to the best that we can determine, what we know --
11    well, we know they did not sign up with Pioneer, and
12    it doesn't look like they terminated their contracts
13    with VistaJet.  But if they had, then that would
14    have been the damage.  But as I said earlier --
15              THE COURT:  Yeah, and if I had a ham
16    sandwich -- what's the difference?  If I had some
17    ham, I'd have a ham sandwich, if I had some bread.
18              MR. GUTCHESS:  Right.  And so we've been
19    unable to establish causation at this point, Your
20    Honor.
21              THE COURT:  Okay.  So that goes for your so
22    called additional or direct damages for breach of
23    contract.  And by the same token, your copyright and
24    trademark damages you can't substantiate, right,
25    because they would follow the same model?
```

```
 1              MR. GUTCHESS:  Yeah.  We've asked their
 2     executives about the business, if they tried to
 3     establish -- and, you know, it hasn't taken off.
 4     And I don't think it's worth going after any damages
 5     on that.  So we're left in a situation where we
 6     probably can establish liability, but not damages.
 7     Whether there's nominal damages or statutory
 8     damages, I think that's even questionable.  Ms.
 9     Niworowski is our expert on that.
10              THE COURT:  So let me make a suggestion
11     here.  It would have been extremely helpful for you
12     to have told this to opposing counsel during the
13     meet and confer process.  Is there some reason why
14     we're all just learning about this today?
15              MR. GUTCHESS:  I believe I've -- you know,
16     don't have a strong recollection of everything we've
17     discussed, but I believe Mr. Haveles and I have
18     discussed this during that process.  And even after
19     the last hearing, when we were together in your
20     courtroom, I mentioned to him upfront that we were
21     not going to have an expert witness because I
22     thought that might be on the damages on the IP
23     stuff, because I thought that might be helpful to
24     them to know.  So I have been communicating this.
25              MR. HAVELES:  Your Honor, I will say
```