# EXHIBIT 65

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| PIONEER BUSINESS SERVICES, LLC d/b/a FOUR CORNERS AVIATION SERVICES,<br><br>                                   Plaintiff,<br><br>                    -v.-<br><br>VISTAJET US, INC.,<br><br>                                   Defendant. | Case No.: 1:22cv6206 |

## PLAINTIFF/COUNTER-DEFENDANT'S RESPONSES AND OBJECTIONS TO DEFENDANT/COUNTER-PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("Federal Rules"), plaintiff/counter-defendant Pioneer Business Services, LLC d/b/a Four Corners Aviation Services ("FCA") hereby responds (the "Response") to the First Set of Interrogatories (the "First Set") of defendant/counter-plaintiff VistaJet US, Inc. ("VistaJet") as follows:

## GENERAL OBJECTIONS

1.      FCA does not waive any objections as to the competency, relevancy, materiality, privilege or admissibility as evidence, for any purpose, of any information provided in this Response.

2.      FCA objects to the First Set to the extent that it seeks to impose obligations on FCA beyond those required under the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules").

3.      FCA objects to the First Set to the extent that it seeks information or documents

that are privileged or protected by the attorney client privilege, the attorney work-product doctrine or any other constitutional, statutory or common-law privilege or doctrine. To the extent that such information or documents are inadvertently disclosed, such disclosure shall not constitute a waiver of FCA's right to assert the applicability of any privilege or protection.

4.      FCA objects to the First Set to the extent that it seeks proprietary nonpublic or confidential information.  FCA will produce any relevant proprietary or confidential information pursuant to and subject to the Stipulated Protective Order entered August 12, 2022.

5.      FCA reserves the right to supplement, revise, correct, clarify or otherwise modify this Response. FCA also reserves the right to assert any other applicable objections to the First Set.

6.      To the extent that FCA responds to an Interrogatory to which FCA objects, such response shall not constitute a waiver of any General Objections or specific objections to any particular Interrogatory.

7.      FCA objects to the First Set to the extent that it seeks information that is within the possession, custody or control of third parties.

8.      FCA objects to the First Set to the extent that it seeks information that is not relevant and is not proportionate to the needs of the case.

9.      FCA objects to the First Set to the extent that the interrogatories are overbroad, vague and ambiguous.

10.     FCA objects to Definitions Nos. 1, 3, 9, 14(b), and 14(c) to the extent they are broader than those definitions set forth for the same terms in Rule 26.3 of the Local Rules. FCA will respond to the First Set as if the definitions in Rule 26.3 of the Local Rules apply.

11.     FCA objects to definition of the terms "Plaintiff," "You" and "Your" (Definition No. 7) on the ground that it is overbroad and imposes obligations beyond those required under

Rules 26 and 33 of the Federal Rules of Civil Procedure, as FCA does not have custody, possession or control over affiliates, members, partners, agents, servants or representatives.

12.     FCA objects to Instruction No. 10 to the extent it purports to call for more information than that required under Rule 26 of the Federal Rules and Rule 26.2 of the Local Rules.

13.     FCA objects to Instruction No. 12 as overbroad and seeking information that is not relevant and is not proportionate to the needs of the case. FCA will respond to the interrogatories for the time period from January 1, 2022 through August 30, 2022.

## FCA'S RESPONSES AND OBJECTIONS TO INTERROGATORIES

INTERROGATORY NO. 1: State the name and address of each person answering these interrogatories and their official position or relationship with the Plaintiff, and regarding each such person, state the nature of the information that person supplied.

**ANSWER:** Subject to the General Objections, FCA responds to Interrogatory No. 1 as follows: The response was prepared by FCA's counsel, in reliance on counsel's work product performed during the course of this entire action, in consultation with the following individuals:

- Brian Proctor, Chief Executive Officer of FCA.  Mr. Proctor supplied information regarding individuals with whom he discussed the VistaJet hours purchased by FCA.

- Michael Rodgers, Chief Financial Officer of FCA.  Mr. Rodgers supplied information regarding individuals with whom he discussed the VistaJet hours purchased by FCA as well as information regarding FCA's damages.

- Cameron Gowans, President and Chief Commercial Officer of FCA.  Mr. Gowans supplied information regarding individuals with whom he discussed the VistaJet hours purchased by FCA.

- Jim Lewis, Senior Managing Director of Mente Group, LLC ("Mente").  Mr. Lewis supplied information regarding individuals with whom he discussed the VistaJet hours purchased by FCA.

- Jay Bushouse, Managing Director-Midwest of Mente.  Mr. Bushouse supplied information regarding individuals with whom he discussed the VistaJet hours purchased by FCA.

- David Hayes, Managing Director-Southeast of Mente.  Mr. Hayes supplied information regarding individuals with whom he discussed the VistaJet hours purchased by FCA.

- Steve Main, Vice President, Transactions of Mente.  Mr. Main supplied information regarding individuals with whom he discussed the VistaJet hours purchased by FCA.

- Vincent Kavanagh, Executive Vice President, Head of Sales of FCA.  Mr. Kavanagh supplied information regarding individuals with whom he discussed the VistaJet hours purchased by FCA.

- Kevin Voss, Vice President, Client Services of FCA.  Mr. Voss supplied information regarding individuals with whom he discussed the VistaJet hours purchased by FCA, trips booked for FCA clients who purchased VistaJet hours, and revenue received from such clients.

INTERROGATORY NO. 2: Identify each person or entity that FCA has contacted, through phone calls, text messages or in person, for purposes of offering or marketing VistaJet hours, and, for each person or entity, specify the date and time of the communication or meeting, and identify who at FCA contacted that person or entity.

**ANSWER:** Subject to the General Objections, FCA responds as follows:

| Person or Entity Contacted by FCA | Date and Time of Communication | Individual Initiating Contact |
|---|---|---|
| Todd Bennett<br>Avpro<br>Mound, TX<br>United States<br>(Street address unknown) | March 14, 2022<br>(Time not recalled) | Steve Main<br>Mente<br>c/o Peter Haveles<br>Akerman LLP<br>1251 Avenue of the Americas<br>37th Floor<br>New York, NY 10020 |
| Approximately 12 individuals whose identity is not recalled | (Date and time not recalled) | Steve Main |
| Silver Air<br>225 State Street<br>Santa Barbara, CA 93101<br>United States | (Date and time not recalled) | Jim Lewis<br>Mente<br>c/o Peter Haveles<br>Akerman LLP<br>1251 Avenue of the Americas<br>37th Floor<br>New York, NY 10020 |
| Sun Air Jets<br>855 Aviation Drive<br>Camarillo, CA 93010<br>United States | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |

| | | |
|---|---|---|
| Clay Lacy Aviation, Inc. ("Clay Lacy")<br>184 Airport Rd. #207<br>White Plains, NY 10604<br>United States | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Willis Lease Finance<br>4700 Lyons Technology Parkway<br>Coconut Creek, Florida 33073<br>United States | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Salesforce<br>Salesforce Tower<br>415 Mission Street<br>3rd Floor<br>San Francisco, CA 94105<br>United States | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Jeffrey Swickard<br>Swickard Auto Group<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Michael Rowell<br>Mesos One<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Brian Kirkdoffer<br>Clay Lacy<br>7435 Valjean Avenue<br>Van Nuys, CA 91406 | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| David Moskowitz<br>Aevergreen, LLC<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Dan Park<br>Hillsboro Aviation<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Bennett Dorrance<br>Sweatmore Air III<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |

| | | |
|---|---|---|
| Gene Sullivan<br>Pacific Aviation<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Mark Oldenwald<br>Aerohead Aviation<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Larry van Tuyl<br>Aerohead Aviation<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| John King<br>Solairus<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Richard Blum (deceased)<br>(Last place of employment unknown)<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| James Gollaher<br>MedIMpact Holding<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Frederick Howe<br>(Place of employment unknown)<br>N329EH, LLC | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Brett Maclachlan<br>Flight Operations, Pty, LTD<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Amy Peykoff<br>Water Force<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |

| | | |
|---|---|---|
| Eric Ganz<br>Fox<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Alec Gores<br>Gores Group<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Marsha Reed<br>EarthStar<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| Kenneth Tuchman<br>Teletech<br>(Address unknown) | Between approximately mid-March 2022 and approximately early July 2022 | Jim Lewis |
| John Phelan<br>MSD Capital<br>1 Vanderbilt Avenue<br>26th Floor<br>New York, NY 10017<br>United States | Between approximately May 2 and approximately May 6, 2022 | Jim Lewis |
| Jeff Kruger<br>Airmax<br>(Address unknown) | May 4, 2022 (Time not recalled) | Jim Lewis |
| Henry Thomas<br>7979 Perimeter Road South<br>Seattle, WA 98108<br>United States | Approximately early May 2022 | Jim Lewis<br><br>and<br><br>Cameron Gowans<br>Mente<br>c/o Peter Haveles<br>Akerman LLP<br>1251 Avenue of the Americas<br>37th Floor<br>New York, NY 10020 |
| Teddy Oberts<br>Salesforce<br>600 Congress Avenue<br>Austin, TX 78701<br>United States | Approximately May 5, 2022 (Time not recalled) | Jim Lewis and Cameron Gowans |

| | | |
|---|---|---|
| Craig Ross<br>Aviation Portfolio<br>3435 Ocean Park Blvd, 107B<br>Santa Monica, CA 90405<br>United States | May 16, 2022 (Time not recalled) | Jim Lewis and Cameron Gowans |
| Brian Counsil<br>SunAir Jets<br>855 Aviation Drive<br>Camarillo, CA 93010<br>United States | Approximately mid-June 2022 | Jim Lewis and Cameron Gowans |
| Randy Perkins<br>Ashbritt<br>565 E Hillsboro Blvd<br>Deerfield Beach, FL 33441<br>United States | Approximately June 14 or 15 (Time not recalled) | David Hayes<br>Mente<br>c/o Peter Haveles<br>Akerman LLP<br>1251 Avenue of the Americas<br>37th Floor<br>New York, NY 10020 |
| Mike Byfield<br>Reyes Holdings<br>3981 Southern Blvd.<br>Hangar A<br>West Palm Beach, FL 33406<br>United States | Approximately June 14 or 15 (Time not recalled) | David Hayes |
| Hannah Davis<br>Global Jet Capital<br>83 Wooster Heights<br>Suite 503<br>Danbury, CT 06810<br>United States | Approximately mid-June 2022 | David Hayes |
| Burke Oliver<br>Gulfstream<br>500 Gulfstream Road<br>Savannah, GA 31408 | Approximately mid-June 2022 | David Hayes |
| Brandon Mayberry<br>Bombardier<br>400 Cote-Vertu Road West<br>Dorval, Quebec<br>H4S 1Y9 Canada | Approximately mid-June 2022 | David Hayes |
| Denise Bell<br>Bombardier<br>400 Cote-Vertu Road West<br>Dorval, Quebec<br>H4S 1Y9 Canada | Approximately mid-June 2022 | David Hayes |
| Rick Pitner<br>Gulfstream | Approximately mid-June 2022 | David Hayes |

| (Address unknown) | | |
|---|---|---|
| Ben Brunton<br>Gralo Real Estate Holdings<br>11802 Keller Point<br>San Antonio, TX 78230<br>United States | Between approximately June 6, 2022 and approximately June 10, 2022 | David Hayes |
| Graham Wright<br>Kyndryl<br>PO Box 41 North Harbour<br>Portsmouth PO6 3AU<br>United Kingdom | Approximately late June 2022 | David Hayes |
| Approximately 3 individuals whose identity is not recalled | June 22, 2022 (Time not recalled) | Brian Proctor<br>FCA<br>c/o Peter Haveles<br>Akerman LLP<br>1251 Avenue of the Americas<br>37th Floor<br>New York, NY 10020 |
| Brad Harris<br>Dallas Jet International<br>97 Village Lane<br>Suite 200<br>Colleyville, TX 76034<br>United States | Approximately early May 2022 | Brian Proctor |
| Frank Vento<br>Bombardier<br>400 Cote-Vertu Road West<br>Dorval, Quebec<br>H4S 1Y9 Canada | Approximately early May 2022 | Brian Proctor |
| Joe Carfagna<br>Leading Edge<br>35 Waterview Blvd.<br>Second Floor<br>Parsippany, NJ 07054<br>United States | Approximately late April 2022 | Brian Proctor |
| John B. Foster<br>1600 River Edge Parkway, N.W.<br>Suite 975<br>Atlanta, GA 30328<br>United States<br>(Place of employment unknown) | Approximately late April 2022 | Brian Proctor |
| Drew Callen<br>Boston Jet Search<br>200 Hanscom Dr.<br>#207 | Approximately late April 2022 | Brian Proctor |

| | | |
|---|---|---|
| Bedford, MA 01730 | | |
| Michael Smith<br>333 Clay Street<br>Suite 5050<br>Houston, TX 77002<br>United States<br>(Place of employment unknown) | Approximately early June 2022 | Brian Proctor |
| James Jones<br>Red Jet LLC<br>(Address unknown) | Approximately June 22, 2022 | Brian Proctor |
| J. Brent Monroe<br>500 Gulfstream Rd.<br>Savannah, GA 31408<br>United States | May 11, 2022 (Time not recalled) | Brian Proctor |
| Brian Olson<br>44 Mayo Ave.<br>Greenwich, CT 06830<br>United States<br>(Place of employment unknown) | May 26, 2022 (Time not recalled) | Cameron Gowans |
| Unknown individual<br>Los Angeles, CA<br>(Place of employment unknown) | (Date and time not recalled) | Cameron Gowans |
| Scott Stuart<br>55 Railroad Ave.<br>Greenwich, CT 06830<br>United States<br>(Place of employment unknown) | Approximately mid-May 2022 | Cameron Gowans |
| Chris Painter<br>The Coca Cola Company ("Coca Cola")<br>4000 Fulton Industrial Blvd<br>Atlanta, GA 30336<br>United States | Approximately May 11, 2022 (Time not recalled) | Cameron Gowans |
| Pat Carney<br>(Place of employment unknown)<br>(Address unknown) | Approximately April 25, 2022 (Time not recalled) | Cameron Gowans |
| Joe Carfagna Jr.<br>Leading Edge<br>35 Waterview Blvd.<br>Second Floor<br>Parsippany, NJ 07054<br>United States | Approximately April 15, 2022 (Time not recalled) | Cameron Gowans |
| Alyssa Heisten<br>651 Management LLC<br>651 Siena Way<br>Los Angeles, CA 90077 | Approximately early April 2022 (Time not recalled) | Cameron Gowans and Jim Lewis |

| | | |
|---|---|---|
| United States | | |
| Stephanie M. Hartsfield<br>Coca Cola<br>4000 Industrial Blvd NW<br>Atlanta, GA 30336<br>United States | Approximately June 1 and 24, 2022 (Times not recalled) | Cameron Gowans and Kevin Voss |
| Amelia Perez<br>Coca Cola<br>4000 Fulton Industrial Blvd<br>Atlanta, GA 30336<br>United States | Approximately June 24, 2022 (Time not recalled) | Kevin Voss |
| Kervin Lareche<br>Coca Cola<br>4000 Industrial Blvd NW<br>Atlanta, GA 30336<br>United States | Approximately June 24, 2022 (Time not recalled) | Kevin Voss |
| Pat Wallace<br>Marino Management, LLC d/b/a DFO<br>25 Ford Road<br>Westport, CT 06880<br>United States | Approximately April 13, 2022 (Time not recalled) | Kevin Voss and Cameron Gowans |
| David Lessing<br>Bridgewater<br>25 Ford Road<br>Westport, CT 06880<br>United States | Approximately April 13, 2022 (Time not recalled) | Kevin Voss and Cameron Gowans |
| Jim Yacone<br>Bridgewater<br>25 Ford Road<br>Westport, CT 06880<br>United States | Approximately April 13, 2022 (Time not recalled) | Kevin Voss and Cameron Gowans |
| Kirk Mies<br>AbbVie<br>3906 Foster McGaw Dr.<br>Waukegan, IL 60087<br>United States | Approximately May 2022 | Jay Bushouse<br>Mente<br>c/o Peter Haveles<br>Akerman LLP<br>1251 Avenue of the Americas<br>37th Floor<br>New York, NY 10020 |
| Rick Britton<br>(Place of employment unknown)<br>(Address unknown) | Approximately late May or early June 2022 | Jay Bushouse |
| Brent Hanson<br>Gulfstream<br>(Address unknown) | Approximately May or June 2022 | Jay Bushouse |

| | | |
|---|---|---|
| Natalie Baragwanath<br>NJ Partners Consulting Ltd.<br>28 Old Brompton Road<br>Suite 427<br>South Kensington, London<br>United Kingdom SW7 3SS | June 10, 2022 (Time not recalled) | Vincent Kavanagh<br>FCA<br>c/o Peter Haveles<br>Akerman LLP<br>1251 Avenue of the Americas<br>37th Floor<br>New York, NY 10020 |
| Yonel Osman<br>(Place of employment unknown)<br>(Address unknown) | Approximately June 10, 2022 and June 21, 2022 (Times not recalled) | Vincent Kavanagh |
| Oliver Thompson<br>Pall Mall Family Office<br>(Address unknown) | Approximately late June 2022 | Vincent Kavanagh |
| Mark Green<br>Volanteus Limited<br>6th Floor<br>Astral Towers<br>Betts Way<br>West Sussex<br>RH10 9UY UK | Approximately June 21, 2022 (Time not recalled) | Vincent Kavanagh |
| Robina Latham<br>MU Vision<br>167-169 Great Portland Street<br>5th Floor<br>London, England W1W 5PF<br>United Kingdom | Approximately July 7, 2022 (Time not recalled) | Vincent Kavanagh |
| Joshua Garth<br>City+Ventures<br>222 South 15th Street<br>Suite 1404s<br>Omaha, Nebraska 68102<br>United States | Approximately early May 2022 | Michael Rodgers |
| Joel Gregory<br>Landmark Properties<br>315 Oconee Street<br>Athens, GA 30601<br>United States | June 1, 2022 (Time not recalled) | Michael Rodgers |

INTERROGATORY NO. 3: For each claim alleged in the Complaint, provide a computation of each category of damage, including a detailed basis for the calculation of damages allegedly suffered by the Plaintiff.

**ANSWER:** Subject to the General Objections, FCA responds as follows:

Pursuant to the Agreements among FCA, VistaJet and SB Group US, Inc., FCA purchased a total of 1131 hours for the Global 6000 aircraft and 48.5 hours for the Global 7500 aircraft, for a total cost of $11,286,300. FCA has used only 108.1 hours on the Global 6000 aircraft, and there remains 1022.9 hours that VistaJet barred FCA from using. FCA has used none of the Global 7500 hours because of VistaJet's breach of the Agreements. Further, FCA borrowed $11,467,404.23 to finance the purchase price and the transaction costs. Since the closing on April 14, 2022 through January 4, 2022, FCA has incurred and paid monthly interest on that loan in the aggregate amount of $448,996.58.

As damages for its breach of contract claim, FCA is entitled to recover: (i) the unused portion of the purchase price in the amount of $11,032,739.56; (ii) the interest paid for that portion of the unused purchase price (98% of paid interest), which is equal to $440,016.65; and (iii) commissions that FCA paid that are allocable to the unused VistaJet hours, which is equal to $61,370.31. The total amount of damages sought by FCA for its breach of contract claim is therefore $11,534,126.52. This amount is not final, as interest continues to accrue monthly on the loan.

As damages for its tortious interference with contract claim, FCA seeks the amount of lost net earnings that FCA suffered as a result of its inability to sell the unused hours due to VistaJet's tortious interference. FCA was reselling the Global 6000 hours at $12,500/hour, and paying a commission of $250/hour on such sales. FCA was therefore achieving net revenue of $2250/hour, for total lost net revenue on the Global 6000 hours of $2,301,525. FCA was reselling Global 7500 hours at $19,500/hour, and paying a commission of $620/hour on such sales. FCA therefore was achieving net revenue of $2880/hour, for total lost net revenue on the Global 7500 hours of

$139,680.  Accordingly, as damages for its tortious interference with contract claim, FCA seeks damages in the total amount of $2,441,205.

INTERROGATORY NO. 4: Identify each flight FCA has booked a) since its inception, and b) for every person or entity that received a copy of the Brochure

ANSWER: FCA objects to Interrogatory No. 4 on the ground that it seeks information that is not relevant or proportional to the needs of the case, to the extent that it seeks information regarding flights that FCA booked that were unrelated to the VistaJet hours purchased by FCA and as to customers to whom FCA did not provide the brochure regarding the VistaJet hours.

Subject to the General Objections and the objections hereto, FCA responds to Interrogatory No. 4 as follows:

### *EF Falcon*

During the period of March 14 through April 1, 2022, FCA had discussions with EF Falcon's broker regarding the purchase of VistaJet hours from FCA, culminating in an understanding that EF Falcon would purchase such hours.  Thereafter, on April 4, 2022, FCA sent a brochure for the benefit of EF Falcon.  Thus, EF Falcon was interested in purchasing VistaJet hours prior to receiving the brochure.

EF Falcon booked the following flights through FCA utilizing the VistaJet hours:

1. Vista Trip # 1073899 from SUA to PHL on May 6, 2022.

2. Vista Trip # 1075590 from PHL-EYW-PHL beginning on May 29, 2022 and ending on June 1, 2022.

3. Vista Trip # 1088402 from KILG-LIMC-ACK  beginning on June 18, 2022 and ending on June 24, 2022.

4. Vista Trip # 1088402 from LIMC-BGR-ACK beginning on June 18, 2022 and ending on June 24, 2022.

5. Vista Trip # 1075621 from ACK-EIKY beginning on July 31, 2022 and ending on August 5, 2022.  As a result of VistaJet's breach of its agreement with FCA and refusal to allow FCA clients to access VistaJet aircraft, this trip was cancelled.

6. Vista Trip # 1075621 from  EIKY-ACK beginning on July 31, 2022 and ending on August 5, 2022.  As a result of VistaJet's breach of its agreement with FCA and refusal to allow FCA clients to access VistaJet aircraft, this trip was cancelled.

7. Vista Trip #1075661 from ACK-EGNM beginning on August 16, 2022 and ending on August 22, 2022.  As a result of VistaJet's breach of its agreement with FCA and refusal to allow FCA clients to access VistaJet aircraft, this trip was cancelled.

8. Vista Trip #1075661 from EGNM-KILG beginning on August 16, 2022 and ending on August 22, 2022.  As a result of VistaJet's breach of its agreement with FCA and refusal to allow FCA clients to access VistaJet aircraft, this trip was cancelled.

9. Vista Trip # 1080636 from PHL-EGPH beginning on October 8, 2022 and ending on October 16, 2022.  As a result of VistaJet's breach of its agreement with FCA and refusal to allow FCA clients to access VistaJet aircraft, this trip was cancelled.

10. Vista Trip # 1080636 from  EGPH-PHL beginning on October 8, 2022 and ending on October 16, 2022.  As a result of VistaJet's breach of its agreement with FCA and refusal to allow FCA clients to access VistaJet aircraft, this trip was cancelled.

### *DFO*

DFO was a long-time customer of both FCA and Mente, and FCA and Mente periodically arranged for charter flights for DFO on VistaJet aircraft prior to April 1, 2022.  Thus, DFO was

familiar with the VistaJet aircraft and their configuration.  In addition, FCA and DFO were parties to a consulting agreement dated January 18, 2022 whereunder FCA arranged flights for DFO at DFO's direction.

On April 12, 2022, FCA initiated discussions with DFO about acquiring VistaJet hours from FCA, and sent a copy of the brochure to  DFO and Bridgewater.  The parties thereafter had discussions that focused solely on the issue of price.

DFO booked the following flights through FCA utilizing the VistaJet hours:

1.  Vista Trip # 1099855 on Global 6000 from HPN-SFO on June 8, 2022.

2.  Vista Trip # 1105519 on Global 6000 from HPN-OEYN on June 20, 2022

3.  Vista Trip # 1105519 on Global 6000 from HPN-OEYN on June 24, 2022.

4.  Vista Trip # 1105519 on Global 6000 from OENN-OJAQ on July 4, 2022.

5.  Vista Trip # 1105519 on Global 6000 from OJAQ-LBBG on July 7, 2022.

6.  Vista Trip # 1105519 on Global 6000 from LBBG-TEB on July 7, 2022.

7.  Vista Trip # 1117193 on Global 6000 from LIRQ-LIMF on August 5, 2022.  As a result of VistaJet's breach of its agreement with FCA and refusal to allow FCA clients to access VistaJet aircraft, this trip was cancelled.

8.  Vista Trip # 1117193 on Global 6000 from LIMF-LIRQ on August 6, 2022.  As a result of VistaJet's breach of its agreement with FCA and refusal to allow FCA clients to access VistaJet aircraft, this trip was cancelled.

9.  Vista Trip # 1100867 on Global 6000 from LIMJ-LEPA on August 11, 2022.  As a result of VistaJet's breach of its agreement with FCA and refusal to allow FCA clients to access VistaJet aircraft, this trip was cancelled.

10. JI Trip # F97X0R on Global 7500 from Jeddah-TEB on July 26, 2022.  As a result of VistaJet's breach of its agreement with FCA and refusal to allow FCA clients to access VistaJet aircraft, this trip was cancelled.

11. Vista Trip # 1129106 on Global 7500 from HPN-LIRQ beginning July 31, 2022 and ending August 1, 2022.  As a result of VistaJet's breach of its agreement with FCA and refusal to allow FCA clients to access VistaJet aircraft, this trip was cancelled.

As a direct result of VistaJet's breach of its agreement with FCA and refusal to permit FCA clients to access VistaJet aircraft, FCA was unable to meet DFO's needs beginning on July 18, 2022.

### *Coca Cola*

Coca Cola owned a fleet of Gulfstream aircraft, including three G600 aircraft.  On or about May 1, 2022, Gulfstream released a flight manual revision, significantly impacting the use of G500 and G600 aircraft.  As a result, FCA and Mente began discussions with Coca Cola regarding an interim solution to Coca Cola's need for flight hours.

Coca Cola advised FCA that it would like to get the cost and services breakdown for the Vista shares block "because we've received sufficient feedback to believe this might be an ideal supplement for our department."  Later that day, FCA advised Coca Cola of the terms for the VistaJet hours, and also sent Coca Cola a brochure.

Coca Cola booked the following flights through FCA utilizing the VistaJet hours:

1. Vista Trip # 1116836 from KFTY-EGLF on June 29, 2022.

2. Vista Trip # 1122334 from FTY-JQF on June 29, 2022. This trip was canceled by Coca Cola.

3. Vista Trip # 1116718 from EGLF-GTF on July 5, 2022.

4.  Vista Trip # 1116718 from GTF-SUN on July 5, 2022.

5.  Vista Trip # 1116718 from SUN-GTF on July 9, 2022.

6.  Vista Trip # 1116718 from GTF-EGLF on July 9, 2022.

7.  Vista Trip # 1123817 from EGLF-LFPB on July 11, 2022.  As a result of VistaJet's breach of its agreement with FCA and refusal to allow FCA clients to access VistaJet aircraft, this trip was cancelled.

8.  Vista Trip # 1122527 from EGGW-EHRD on July 20, 2022.  As a result of VistaJet's breach of its agreement with FCA and refusal to allow FCA clients to access VistaJet aircraft, this trip was cancelled.

INTERROGATORY NO. 5: Identify all revenues received from each person or entity that received a copy of the Brochure.

**ANSWER:** FCA objects to Interrogatory No. 5 on the ground that it seeks information that is not relevant or proportional to the needs of the case, to the extent that it seeks information regarding revenues received by FCA for products or services unrelated to the VistaJet hours or from customers who did not receive the brochure regarding the VistaJet hours.

Subject to the General Objections and the objections hereto, FCA responds to Interrogatory No. 5 as follows:

FCA received total revenue in the amount of $812,500 from EF Falcon for the VistaJet hours that EF Falcon purchased.  As a result of VistaJet's breach of its agreement with FCA and refusal to grant access to VistaJet aircraft to FCA's clients, FCA had to refund EF Falcon $677,769.33.

FCA received total revenue in the amount of $2,186,000 from DFO for the VistaJet hours that DFO purchased.  Following VistaJet's breach of its agreement with FCA and refusal to grant

access to VistaJet aircraft to FCA's clients, FCA had to refund DFO $1,239,190.38 in cash and

permit DFO to apply an additional $569,934.62 of the amount DFO had paid to broker trips that

were necessitated by VistaJet's refusal to honor trips using the VistaJet hours booked by FCA for

DFO.

FCA received revenue in the amount of $437,500 from Coca Cola for the trips set forth in

the Answer to Interrogatory No. 4.

Dated: New York, New York
      January 5, 2022

                                       **AKERMAN LLP**

                                       By: _/s/ H. Peter Haveles, Jr._
                                       H. Peter Haveles, Jr.
                                       Lisa M. Coyle
                                       1251 Avenue of the Americas, 37th Floor
                                       New York, New York 10020
                                       Tel: (212) 880-3800
                                       Fax: (212) 880-8965
                                       Peter.haveles@akerman.com
                                       Lisa.coyle@akerman.com

                                       **SHACKELFORD,  BOWEN,  MCKINLEY**
                                       **& NORTON, LLP**
                                       Talmage Boston (_pro hac vice_)
                                       Texas Bar No. 02681800
                                       9201 N. Central Expressway, 4th Floor
                                       Dallas, TX 75231
                                       Tel: (214) 780-1400
                                       Fax: (214) 780-1401
                                       tboston@shackelford.law

                                       _Attorneys for Plaintiff Pioneer Business_
                                       _Services, LLC d/b/a Four Corners Aviation_
                                       _Services_

## VERIFICATION

I, Michael Rodgers, as Chief Financial Officer of Pioneer Business Services, LLC d/b/a Four Corners Aviation Services ("FCA"), hereby sign this Verification of the foregoing answers to VistaJet US, Inc.'s First Set of Interrogatories ("Answers to Interrogatories") by and on behalf of FCA, and am duly authorized to do so. Some of the matters stated in the foregoing Answers to Interrogatories are not within my personal knowledge, and I am informed that there is no single representative, agent or employee of FCA who has personal knowledge of all such matters. Subject to these limitations, I verify under penalty of perjury that the facts stated in the foregoing Answers to Interrogatories have been assembled by FCA employees, agents and representatives, and I am informed by said employees, agents and representatives that the matters set forth in the aforesaid Answers to Interrogatories are accurately derived from the information and records available to FCA.

Executed on January 5, 2023.

Michael Rodgers

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PIONEER BUSINESS SERVICES, LLC   d/b/a
FOUR CORNERS AVIATION SERVICES,

                                      Plaintiff,

                    -v.-

VISTAJET US, INC.,

                                      Defendant.

Case No.: 1:22cv6206

---

### PLAINTIFF/COUNTER-DEFENDANT'S RESPONSES AND OBJECTIONS
### TO DEFENDANT/COUNTER-PLAINTIFF'S
### <u>SECOND SET OF INTERROGATORIES</u>

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, plaintiff/counter-defendant Pioneer Business Services, LLC d/b/a Four Corners Aviation Services ("FCA") hereby responds to the Second Set of Interrogatories (the "Second Set") of defendant/counter-plaintiff VistaJet US, Inc. ("VistaJet") as follows:

### <u>GENERAL OBJECTIONS</u>

1.      FCA does not waive any objections as to the competency, relevancy, materiality, privilege or admissibility as evidence, for any purpose, of any information provided in FCA's responses.

2.      FCA objects to the Second Set to the extent that it seeks to impose obligations on FCA beyond those required under the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules").

3.      FCA objects to the Second Set to the extent that it seeks information or documents

that are privileged or protected by the attorney client privilege, the attorney work product doctrine or any other constitutional, statutory or common-law privilege or doctrine.  To the extent that such information or documents are inadvertently disclosed, in accordance with the Stipulated Protective Order (Dkt. 49), such disclosure shall not constitute a waiver of FCA's right to assert the applicability of any privilege or protection.

4.     FCA objects to the Second Set to the extent that it seeks proprietary nonpublic or confidential information.  FCA will produce any relevant proprietary or confidential information pursuant to and subject to the Stipulated Protective Order.

5.     FCA reserves the right to supplement, revise, correct, clarify or otherwise modify its responses to the Second Set.  FCA also reserves the right to assert any other applicable objections to the Second Set.

6.     To the extent that FCA responds to an Interrogatory to which FCA objects, such response shall not constitute a waiver of any General Objections or specific objections to any particular Interrogatory.

7.     FCA objects to the Second Set to the extent that it seeks information that is not relevant and is not proportionate to the needs of the case.

8.     FCA objects to Definition Nos. 1, 3, 9, 14(b), and 14(c) to the extent they are broader than those definitions set forth for the same terms in Rule 26.3 of the Local Rules.  FCA will respond to the Second Set in accordance with the definitions in Rule 26.3 of the Local Rules.

9.     FCA objects to definition of the terms "Plaintiff," "You" and "Your" in Definition No. 7 on the grounds that they are overbroad and impose obligations beyond those required under Rules 26 and 33 of the Federal Rules of Civil Procedure, as FCA does not have custody, possession or control over affiliates, members, partners, agents, servants or representatives.

2

10.     FCA objects to Instruction No. 10 to the extent it purports to call for more information than that required under Rule 26 of the Federal Rules of Civil Procedure and Rule 26.2 of the Local Rules.

11.     FCA objects to Instruction No. 12 as overbroad and seeking information that is not relevant and is not proportionate to the needs of the case.  FCA will respond to the interrogatories for the time period from January 1, 2022 through August 30, 2022.

## FCA'S RESPONSES AND OBJECTIONS TO INTERROGATORIES

INTERROGATORY NO. 6: Describe in detail all instances in which any person has asked whether, or suggested a belief that, any good or service offered by FCA (e.g., the Insight Card) is sponsored or co-sponsored, licensed, endorsed, or approved by VistaJet.

**ANSWER:** Subject to the General Objections, FCA responds to Interrogatory No. 6 as follows:

There are no such instances of which FCA is aware or has knowledge .

INTERROGATORY NO. 7: Describe in detail the complete factual basis for FCA's contention in its Fourth Affirmative Defense that "VistaJet cannot establish that FCA's use of VistaJet's alleged marks do not constitute nominative fair use . . . ." (Dkt. 77 ¶ 103).

**ANSWER:** Subject to the General Objections, FCA responds to Interrogatory No. 7 as follows:

The brochure about which VistaJet complains (the "Brochure") uses '"VistaJet" and "Vista" solely to describe or identify the operator of the aircraft and the actual VistaJet services that FCA purchased and was allowed to resell pursuant to the Addendum signed by VistaJet and SB Group US, Inc. ("SB Group") on April 1, 2022 (the "Addendum"), which SB Group assigned to FCA with VistaJet's consent.  When providing aircraft services, FCA was required to disclose such information.  Further, it would have been impossible for FCA to describe the fact that it was reselling VistaJet hours (as the Addendum expressly authorized FCA to do) without using

3

"VistaJet" or "Vista" in its marketing efforts, since VistaJet was the operator of the aircrafts and the source of the flight hours that FCA was reselling and was the provider of all services to the customers who would purchase the VistaJet flight hours from FCA.  Finally, FCA makes no statement in the Brochure that VistaJet sponsored or endorsed FCA.

INTERROGATORY NO. 8: Describe in detail the complete factual basis for FCA's contention in its Sixth Affirmative Defense that 'VistaJet did not own (i) the photographs at issue or (ii) any right to assert any claims arising out of use of said photographs during the time that FCA used the photographs." (Dkt. 77 ¶ 105).

**ANSWER:** Subject to the General Objections, FCA responds to Interrogatory No. 8 as follows:

In Request Nos. 8, 9, 10 and 11 of FCA's Second Request For Production of Documents, FCA sought the documents evidencing ownership of the photographs. There is no evidence, however, that VistaJet owned or had a license for the photographs during the time that FCA circulated the Brochure regarding the sale of VistaJet hours. Rather, the evidence produced by VistaJet established that the photographer who presumptively owned the photographs did not transfer ownership until after this action was underway, only by execution of the Assignment of Image Ownership to VistaJet International Limited, which Simone Migliaccio (the photographer) signed on August 19, 2022. The statement in that document that such assignment was retroactive is both ineffective and, to the extent that it attempts to reflect a prior understanding that was effective as of March 16, 2021, constitutes hearsay. Moreover, at the time of FCA's use of the Brochure, VistaJet never publicly asserted ownership of the photographs.

INTERROGATORY NO. 9: Describe in detail the complete factual basis for FCA's contention in its Twelfth Affirmative Defense that "FCA had no intent to infringe any alleged copyrights belonging to VistaJet, and FCA's use of any alleged copyrights was innocent." (Dkt. 77 ¶ 111).

**ANSWER:** Subject to the General Objections, FCA responds to Interrogatory No. 9 as follows:

*See* the Answer to Interrogatory Nos. 7 and 8.  FCA's Brochure contained facts that pertain to the aircraft which would be flying customers during the hours that were being marketed by FCA.  Not only was FCA well within its contractual rights to do so, it was also required to disclose much of this information.  In order to inform potential customers about the aircraft, FCA included photographs of VistaJet aircraft in the Brochure.  FCA simply used photographs that were widely available on the internet and were not at the pertinent time owned by VistaJet, let alone subject to a copyright held by VistaJet.  Further, VistaJet did not advise the public that VistaJet had copyrighted the photographs in question.

Further, VistaJet photographs can be readily found on the internet or social media sites with no VistaJet logos or any indication that the photographs are copyrighted by VistaJet. Photographs that are identical or substantially identical to the photographs in the Brochure were widely disseminated on, and available to anyone from, the internet.  For example, such photographs could be found at the pertinent times on the following websites www.aviationweek.com, www.ainonline.com, www.privatejetcardcomparisons.com, www.terradaily.com, www.businessinsider.com, www.dimsumdaily.hk, www.wtravelmagazine.com and www.newsin.asia.  They are also readily available on social media platforms such as Instagram.

In sum, FCA used photographs of VistaJet aircraft solely to portray accurately to potential customers the flight hours FCA was contractually allowed to resell.  VistaJet did nothing to make FCA aware of, or to have any reason to believe that the photographs were allegedly copyrighted by VistaJet.

INTERROGATORY NO. 10: Describe in detail the complete factual basis for FCA's contention in its Thirteenth Affirmative Defense that "the Assignment and Assumption Agreement and the Addendum dated April 1, 2022 . . . entitled FCA to use the photographs and diagrams regarding the Global 5000/6000 and Global 7500 aircraft and/or provided FCA with an implied license to use said photographs and diagrams." (Dkt. 77 ¶ 112).

**ANSWER:** In addition to the General Objections, FCA specifically objects to Interrogatory No. 10 because it seeks legal analysis regarding the interpretation of the contractual terms of issue in this action. Subject to the General Objections and the objection set forth herein, FCA responds to Interrogatory No. 10 as follows:

The Addendum expressly grants FCA the right to resell blocks of hours to third parties under the Program Agreements assigned to FCA pursuant to the Assignment Agreement. FCA could not sell such blocks of hours to third parties without disclosing to such third parties the operator, information regarding the aircraft and the specifications of the aircraft on which the hours would be flown. Further, none of the agreements among SB Group, VistaJet and FCA prohibited such conduct, and VistaJet, in fact, did not hold any copyrights for the photographs and diagrams at the time that FCA used them.

INTERROGATORY NO. 11: Describe in detail the complete factual basis for FCA's contention in its Fourteenth Affirmative Defense that "[t]o the extent that VistaJet had any proprietary interest or copyright in any of the photographs or diagrams used by FCA in the Brochure, VistaJet waived (i) any such copyright and proprietary interest as well as (ii) the right to require any third party to obtain VistaJet's consent prior to making use of photographs of the Global 5000/6000 and Global 7500 aircraft on the VistaJet website." (Dkt. 77 ¶ 113).

**ANSWER:** Subject to the General Objections, FCA responds to Interrogatory No. 11 as follows:

*See* the Answer to Interrogatory No. 9. Further, the photographs at issue were widely disseminated on the internet and social media platforms without any VistaJet logos or other indication that the photographs were allegedly copyrighted by VistaJet. Despite the widespread publication of photographs of VistaJet aircraft, VistaJet failed to take any actions to enforce any

copyright or proprietary interest it allegedly possessed in such material and to cause such usage to cease.

VistaJet, for example, did not police the republication of photographs of VistaJet aircraft by press and news organizations. VistaJet has not sought releases from or granted consents to press and news organizations to publish photographs of VistaJet aircraft.

Additionally, VistaJet has not commenced any actions against any other parties for alleged infringement of any copyrights of photographs actually held by VistaJet. To the extent that VistaJet sent any cease and desist letters to any third parties, there is no evidence that the recipients ceased using the photographs or that VistaJet ever took any further steps against those parties after sending such letters.

INTERROGATORY NO. 12: Describe in detail the complete factual basis for FCA's claim for tortious interference with contract, as alleged in FCA's complaint. (Dkt. 10-1 ¶¶ 32-36).

**ANSWER:** Subject to the General Objections, FCA responds to Interrogatory No. 12 as follows:

On April 1, 2022, VistaJet expressly agreed that FCA would acquire and could resell hours on the Global 5000/6000 and Global 7500 aircraft, without limitation, except that FCA could sell to a maximum of eight customers (which customers were subject to approval of VistaJet, which approval could not be unreasonably withheld). As a reseller of the hours that it acquired, FCA had the right without any restrictions: (i) to market those hours; (ii) to sell those hours at any price that FCA determined; (iii) to disclose to potential customers the owner of, the nature and extent of the services on and the description of the aircraft to be used for the flight hours; and (iv) to disclose the fact that VistaJet would be providing all services and operations with respect to the flight hours that FCA had an absolute right to resell. Indeed, as to the last two items, FCA was required to disclose much, if not at all, of such information.

7

On June 24, 2022, after seeing FCA's marketing brochure, Thomas Flohr, the chairman of Vista Holdings, directed that VistaJet terminate the agreement by which the hours were sold and "not honour one single flight booking" under the agreement.  Mr. Flohr gave this direction because he was "beyond furious" that FCA was reselling hours on the VistaJet aircraft at prices lower than VistaJet's price for flight hours on the Global aircraft to VistaJet customers.

Mr. Flohr directed Ian Moore, the chief commercial officer of VistaJet International and VistaJet United States, to "kill" FCA, "otherwise [Mr. Flohr] will".  When Mr. Moore suggested that VistaJet claim a breach and keep all the cash, Mr. Flohr responded "10000 %," declaring "game over."  Mr. Moore then assured Mr. Flohr that "we'll turn this into a big positive" by making "an example" of FCA.

Thereafter, on July 1, 2022, by its counsel, VistaJet declared a default on the fallacious grounds that FCA: (i) sold and/or marketed to VistaJet customers without consent; (ii) infringed purported copyrights on photographs (which VistaJet, in fact, did not own); (iii) infringed VistaJet's trademark because FCA disclosed in the FCA brochure that VistaJet was the owner and operator of the aircraft; (iv) failed to get pre-approval of FCA's brochure; and (v) failed to get pre-approval of the potential customers to whom FCA marketed the resale of the VistaJet hours. Further, VistaJet denied FCA the right to use any flight hours that FCA acquired and had an unfettered right to market and sell unless FCA "cured" all of the contrived breaches.

As a result, VistaJet denied FCA the ability to fly any further flights on VistaJet aircraft after July 18, 2022, despite FCA's having purchased hours to do so through September 30, 2023. FCA had no choice but to cancel all the post-July 18 flight bookings that FCA had made for three of its customers, i.e., the Dalio Family Office ("DFO"), EF Falcon and Coca-Cola.  In addition, even though VistaJet knew that Coca-Cola was an FCA customer, VistaJet inundated the CEO of

Coca-Cola with emails seeking to sell VistaJet hours directly to Coca-Cola, thereby infuriating the Coca-Cola CEO and further damaging Coca-Cola's relationship with FCA.

With respect to each of those three FCA customers, VistaJet's bad faith and knowingly wrongful termination of the sale of the flight hours damaged FCA's existing contractual and business relationships with each of those three customers. As to DFO, FCA had to go out of pocket and pay for alternative flights for the overseas flights that VistaJet had cancelled, and FCA had to renegotiate its agreement with DFO. As to EF Falcon, EF Falcon terminated the contract between FCA and EF Falcon for the sale of hours because VistaJet denied FCA the ability to perform, and FCA had to return all the money for unused flight hours that EF Falcon had paid to FCA. Additionally, as a result of VistaJet's bad faith conduct, EF Falcon is no longer an FCA client. As to Coca-Cola, Coca-Cola terminated the contract that it had with FCA for the purchase of VistaJet hours and ceased to be an FCA client.

In addition, VistaJet's actions denied FCA the ability to resell the unused and uncommitted hours to new customers with whom FCA was having discussions and denied FCA the ability to make new agreements to sell the remaining and uncommitted blocks of hours on the VistaJet aircraft. FCA had no choice but to terminate discussions that FCA was undertaking with potential new customers, and FCA had to advise such parties that FCA no longer had the ability to deliver the hours on the VistaJet aircraft due to VistaJet's actions. Further, VistaJet perpetuated to third parties to whom FCA could have resold the VistaJet hours the false statement that FCA had no right whatsoever to resell any of the VistaJet hours, declaring that such conduct was "illegal." FCA consequently lost those business opportunities and was left with worthless hours. VistaJet thereby interfered with and denied FCA the ability to earn the revenue that FCA otherwise could have earned for the sale of those hours.

The injury to FCA resulting from VistaJet's tortious interference with FCA's contractual and prospective contractual relationships is set forth in FCA's answer to Interrogatory No. 3 of VistaJet's First Set of Interrogatories.

Dated: New York, New York
       February 22, 2023

**AKERMAN LLP**

By:  _/s/_ H. Peter Haveles, Jr._____
H. Peter Haveles, Jr.
Lisa M. Coyle
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Tel: (212) 880-3800
Fax: (212) 880-8965
Peter.haveles@akerman.com
Lisa.coyle@akerman.com

**SHACKELFORD,  BOWEN,  MCKINLEY
& NORTON, LLP**
Talmage Boston (_pro hac vice_)
Texas Bar No. 02681800
9201 N. Central Expressway, 4th Floor
Dallas, TX 75231
Tel: (214) 780-1400
Fax: (214) 780-1401
tboston@shackelford.law

_Attorneys for Plaintiff Pioneer Business
Services, LLC d/b/a Four Corners Aviation
Services_

10

## VERIFICATION

I, Michael Rodgers, as Chief Financial Officer of Pioneer Business Services, LLC d/b/a Four Corners Aviation Services ("FCA"), hereby sign this Verification of the foregoing answers to VistaJet US, Inc.'s Second Set of Interrogatories ("Answers to Interrogatories") by and on behalf of FCA, and am duly authorized to do so.  Some of the matters stated in the foregoing Answers to Interrogatories are not within my personal knowledge, and I am informed that there is no single representative, agent or employee of FCA who has personal knowledge of all such matters. Subject to these limitations, I verify under penalty of perjury that the facts stated in the foregoing Answers to Interrogatories have been assembled by FCA employees, agents and representatives, and I am informed by said employees, agents and representatives that the matters set forth in the aforesaid Answers to Interrogatories are accurately derived from the information and records available to FCA.

Executed on February 22, 2023.

Michael Rodgers