# EXHIBIT 87

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 1:22-cv-06206-ALC

PIONEER BUSINESS SERVICES, LLC d/b/a
FOUR CORNERS AVIATION SERVICES,

    Plaintiff/Counter-Defendant,

v.

VISTAJET US, INC.

    Defendant/Counter-Plaintiff.
_____/

**VISTAJET US, INC.'S RESPONSES AND OBJECTIONS TO
PLAINTIFF'S SECOND SET OF INTERROGATORIES**

VistaJet US, Inc. ("VistaJet"), pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, hereby serves its objections and responses to Plaintiff/Counter-Defendant's Second Set of Interrogatories, which was served on January 4, 2023.

**OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**Interrogatory No. 1**. State the number of: (i) new VistaJet Customers, (ii) VistaJet Customers that renewed their membership or agreements with VistaJet, (iii) VistaJet Customers that did not renew their membership or agreements with VistaJet, and (iv) VistaJet Customers that terminated their membership or agreements with VistaJet during each of the following periods: (a) the year 2020; (b) the year 2021; (c) the first quarter of 2022; (d) the second quarter of 2022; (e) the third quarter of 2022; and (f) the fourth quarter of 2022.

**RESPONSE TO INTERROGATORY NO. 1:**

|  | 2020 | 2021 | 2022 | 2022Q1 | 2022Q2 | 2022Q3 | 2022Q4 |
|---|---|---|---|---|---|---|---|
| New Customers | 142 | 204 | 388 | 37 | 74 | 112 | 165 |
| Customers Renewed | 113 | 165 | 156 | 45 | 36 | 33 | 47 |
| Customers Not Renewed | 48 | 61 | 128 | 21 | 27 | 38 | 42 |
| Early termination | 12 | 10 | 21 | 3 | 6 | 7 | 5 |

- 1 -

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

**Interrogatory No. 2**.   State where SB Group, Inc. and each of its Affiliates in the aggregate has ranked among VistaJet Customers in terms of the annual dollar amount of billings under agreements with each of VistaJet and VistaJet Limited International for each of the following years: (i) 2020, (ii) 2021, and (iii) 2022.

**RESPONSE TO INTERROGATORY NO. 2:**

2020

| Rank | Customer |
|---|---|
| 28 | SoftBank Investment Advisers (UK) Limited |
| 66 | SB Group US, Inc. |
| 215 | SB Management Limited |
| 800 | SoftBank (Charter Account) |

2021

| Rank | Customer |
|---|---|
| 7 | SB Group US, Inc. |
| 44 | SB Management Limited |
| 55 | SoftBank Investment Advisers (UK) Limited |

2022

| Rank | Customer |
|---|---|
| 46 | SoftBank Investment Advisers (UK) Limited |
| 863 | SB Management (DIFC) Limited |
| 1462 | SB Management Limited |
| 1483 | SB Group US, Inc. |

Dated: February 14, 2023.

                Respectfully submitted,

                **AXS LAW GROUP, PLLC**
                2121 NW 2nd Avenue, Suite 201
                Miami, FL 33127
                Tel:  305.297.1878

                By:  */s/ Jeffrey W. Gutchess*
                Jeffrey W. Gutchess
                jeff@axslawgroup.com
                Bernardo N. de Mello Franco
                bernardo@axslawgroup.com
                eservice@axslawgroup.com

                and

**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

**FISH & RICHARDSON P.C.**
Vivian Cheng (VC6321)
cheng@fr.com
Kristen McCallion (KM5593)
mccallion@fr.com
7 Times Square
20th Floor
New York, NY 10036
Tel: (212) 765-5070
Fax: (212) 258-2291

*Attorneys for Defendant / Counter-Plaintiff VistaJet US Inc.*

- 4 -

## **VERIFICATION**

I, Leona Qi, am President of VistaJet US, Inc. I am the agent of VistaJet US Inc. for the purposes of answering Plaintiff Pioneer Business Services, LLC d/b/a Four Corners Aviation Services' Second Set of Interrogatories. I have read the foregoing interrogatories and the answers to those interrogatories, which are true according to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct.

Dated this 14th day of February, 2023.

DocuSigned by:
*Leona Qi*
5E85523C9A414D6...

- 5 -

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the forgoing was served via email on counsel of record of in this action on this 14th day of January, 2023.

*/s/ Jeffrey W. Gutchess*
Jeffrey W. Gutchess

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**CASE NO. 1:22-cv-06206-ALC**

PIONEER BUSINESS SERVICES, LLC
d/b/a FOUR CORNERS AVIATION SERVICES,

    Plaintiff/Counter-Defendant,

    v.

VISTAJET US, INC.

    Defendant/Counter-Plaintiff.
_____/

**VISTAJET US, INC.'S AMENDED RESPONSES AND OBJECTIONS
TO COUNTER-DEFENDANT'S FIRST SET OF INTERROGATORIES**

VistaJet US, Inc. ("VistaJet"), pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, hereby serves its Amended Responses and Objections to Counter-Defendant Pioneer Business Services, LLC d/b/a Four Corners Aviation Services' ("FCA") First Set of Interrogatories, which was served on November 29, 2022.

**ANSWERS TO INTERROGATORIES**

**INTERROGATORY NO. 1**: State the (i) the amount of alleged damages that VistaJet seeks to recover under each of VistaJet's claims for relief, (ii) the method and manner as to how such alleged damages are calculated, (ii) the facts regarding the injury that gives rise to such damages and (iv) all Documents and Communications substantiating or evidencing such injury and damages.

**ANSWER:**

For its Fraudulent Inducement claim (Count I), VistaJet is entitled to monetary damages amounting to the full value of what Softbank, which was no longer able to use the hours, would have already paid plus what was still owed to VistaJet had the contract not been assigned, which

VistaJet calculates to be at least $11,286,300.00 based upon the amounts outstanding under the Softbank Agreement. The facts that give rise to VistaJet's fraud in the inducement claim include, among other things, FCA's misrepresentations, during contract negotiations, that it had a stable of 8 clients, who were waiting for the delivery of their aircraft and needed interim lift, to whom FCA would offer VistaJet hours. That was false. Rather than offering VistaJet hours to its 8 specific existing clients, as it had represented, FCA created a competing product called "Insight Card with Vista Availability," and marketed VistaJet hours in the wider aviation market, at a lower rate, to undercut VistaJet prices. Further details about FCA's misrepresentations can be found in the deposition testimony of Ms. Leona Qi.

For its Breach of Contract claim (Count II), VistaJet is entitled to the benefit of the bargain, based on the full value of the Assignment and Assumption Agreement, dated April 1, 2022 ("Agreement"), which VistaJet calculates to be at least $12,000,000.00.

FCA breached numerous provisions of the parties' agreement, including but not limited to a) disclosing confidential information despite two separate confidentiality provisions in its agreement with VistaJet, and a separate Non-Disclosure Agreement with Softbank, b) attempting to resell the hours to more than eight different customers, c) attempting to sell the hours without obtaining pre-approval by VistaJet of any single customer, d) holding FCA out as having partnered with VistaJet, e) offering VistaJet hours to existing VistaJet clients, and f) using VistaJet's brand name, its trademark, its copyrighted photographs, the image of VistaJet's planes, in an attempt to build a separate business for FCA.

FCA's CEO admitted under oath that program rates are generally kept confidential from the broader market. He also signed a Non-Disclosure Agreement with Softbank before he was given access to Softbank's program rates, and Softbank instructed him, separate and apart from

their NDA, not to disclose anything to third parties without FCA itself getting an NDA with the third party. FCA's Agreement with VistaJet stated that "Unless otherwise agreed to in writing by the parties hereto, each party agrees that all information contained herein or related to the contents of the Agreement, including the terms and existence of this Agreement, is confidential, and shall not disclose, or permit the disclosure of any of the foregoing …."

Despite all this, FCA claimed to have partnered with VistaJet and blatantly disclosed the existence of its agreement with VistaJet, the highly confidential program rates, and the commercial terms and conditions, to more than 400 individuals and companies in the industry, including brokers, and encouraged those brokers to disclose these rates and terms and conditions to their own clients.

As a matter of black letter law, a material breach generally suspends the non-breaching party's obligation to perform the contract pending any potential cure. And a default also generally results in a forfeiture of any money deposited or prepaid. Similarly, by way of example, just as a party to a contract, who has paid $10M, cannot just refuse to perform and then demand return of the $10M, a party who commits a material breach, causing potentially significant harm, and then refuses to diligently attempt to cure the breach, cannot simply demand return of its prior payments. For these reasons FCA is entitled to keep all funds related to the Program Agreement.

In addition, the parties agreed that an "Event of Default" includes a "material breach" that "continues for 30 calendar days after written notice is received from the non-defaulting party, unless, within such 30 days, the defaulting party diligently commences a cure of such breach and competes said cure within 60 calendar days of receipt of such written notice." The parties' agreement further provided that "During an Event of Default by [FCA], [FCA] shall not be entitled to use of the Program Aircraft, and the Member's Committed Hours shall be reduced, as liquidated

3

damages and not as a penalty, by an amount equal to one twelfth of the then-current Year's Committed Hours for each 30-day period (or a pro rata portion thereof) that such default persists."

This clause was reasonable and proportionate at the time it was entered into (and remains so now) based upon the probable losses resulting from a breach. In particular, for highly confidential pricing and commercial terms information, it was and is reasonable to believe that a breach of confidentiality would result in significant damage.[1] In addition, it is well settled that the approximate loss in sales and market share from the disclosure of confidential business information is highly indeterminate.

Rather than impose a fixed sum of money as liquidated damages, the parties agreed to a reduction in hours available pending the curing of the default. The fact that the hours reduced would vary based upon the length of the default and whether FCA diligently attempted to cure the default confirms that it is a reasonable estimate at the time of contracting of the damage that would flow from a breach.

VistaJet followed the contract and notified FCA that it had "triggered an Event of Default" and demanded that FCA take immediate steps to cure the Default, including: "stop circulating any and all written documents and/or communications relating to VistaJet," "[p]rovide VistaJet with copies of all Documents circulated to … external parties" and "[p]rovide VistaJet a list with each recipient of the Documents as well as their contact information."

---

[1] FCA also included a clause in its own contracts for sale of the VistaJet hours that changed the VistaJet clause. Whereas FCA had largely mirrored the terms of VistaJet's Program Agreement, and outright copied all of the VistJet clauses, for the Default clause, FCA provided that: "FCA may terminate this agreement if customer commits a breach of any material term or condition of this agreement, including customer's failure to replenish the deposit as required under Section 1(b) above. If this agreement is terminated by -- for any reason, FCA will be entitled to retain all amounts paid for the total flight hours and resell the remaining total flight hours in its sole discretion, with customer otherwise receiving a full refund of their deposit less any outstanding invoices from FCA."

FCA refused to commence any cure of its breach, let alone do so diligently. In fact, FCA's actions were the opposite of diligence – they were recalcitrant. For example, FCA's VP of Sales, Mr. Vince Kavanaugh, wrote: "I just can't see how it makes sense for us not to engage with these prospects (according to VJ's latest request). For example - if one of our intended 8 clients had many business ventures and partners; would we/VJ ever really know how [sic] is taking the trips?"

FCA, like its VP of Sales, refused to diligently seek to cure but rather precipitously filed litigation falsely claiming an "emergency" hoping to convince a federal judge to override VistaJet's Event of Default clause. In doing so, FCA made a number of false statements in support of its motion, including its claim that "[a]s of today, no representative of FCA has disclosed to anyone … the 'legal and commercial terms of the Program' which is the subject of the Program Agreement."

After that attempt failed, FCA continued to refuse to cooperate in disclosing to VistaJet the number of individuals and companies it had distributed the offending brochure to. In fact, even as part of a scheduled settlement conference with a federal judge in late September 2022, FCA continued to refuse to disclose the recipients of the brochure, despite VistaJet clearly explaining again that a "necessary first step is to understand how much harm has been done to VistaJet's business. … Please confirm FCA will identify all those contacted so that we can evaluate and have a productive discussion going forward."

It was not until late October 2022 that FCA finally began producing documents that revealed the recipients of FCA's illegal disclosures, and it did so then only under compulsion by the Federal Rules of Civil Procedure. Given the conduct of FCA and its counsel, it took VistaJet until December 2022 – a full six months – to begin to determine the extent of the wrongful disclosure. FCA's production showed that FCA had sent the brochure in question, and also emails

disclosing the information, to literally hundreds of people and companies, including many existing VistaJet clients, actively soliciting the VistaJet clients to not renew their contracts with VistaJet but rather purchase FCA's hours, which FCA described as a "steal of a deal." What's worse, FCA also sent the brochure to many brokers and not only encouraged those brokers to send it on to others, but invited them to develop their own competing products using the VistaJet name.

Thus, FCA's Event of Default has continued from July 2022 through the present, with FCA sill making no effort, let alone a diligent effort, to cure the default. As a result, during an Event of Default, FCA has not been entitled to use the Program Aircraft and FCA's Committed Hours have been reduced by one twelfth for each 30-day period that the default has persisted.

Unascertainable damages include damages from existing clients who received the brochure or otherwise learned of the preferential rates provided, which were illicitly placed into the marketplace by FCA, and (a) chose not to renew their VistaJet contracts at all, (b) negotiated lower rates to their VistaJet contracts, (c) will not renew their VistaJet contracts, over the next years, upon expiration of their current contracts, or (d) will negotiate significantly lower rates on their future contracts. Likewise, VistaJet is highly likely to suffer unascertainable damages from prospects or potential clients with whom VistaJet currently has no relationship who (a) received the brochure or otherwise learned of the preferential rates and special conditions provided to Softbank and chose not to contract with VistaJet, at market rates and standard conditions, (b) were confused by FCA's so-called reseller relationship with VistaJet and decided not to work with VistaJet because they believed that, to work with VistaJet, they would need to go through a middle man or a broker, or (c) were confused by FCA's Brochure and avoided doing business with VistaJet because they could not understand how VistaJet's programs work.

Any existing or targeted clients of VistaJet who learned of these extremely low and highly confidential pricing terms could have negotiated significantly lower rates for their own program hours, and VistaJet would never know the reason why the customer was demanding lower rates. This is akin to the "loss of pricing power," a loss that is widely recognized to be both unascertainable and irreparable.[2]

And existing VistaJet customers may have decided not to renew their program contracts upon learning that others had been paying significantly lower rates. The loss of just one program customer could cause a loss of ten million dollars. And VistaJet customers who failed to renew spiked in the second half of 2022, after FCA's release of the confidential information, meaning VistaJet may have suffered tens of millions of dollars in lost revenues and income. VistaJet cannot ascertain the nature and extent of these damages because doing so would require VistaJet to contact each of its new customers, and its former customers, and ask them the reasons for their demanding lower rates or their refusal to renew the program contracts. Often times, the customers do not respond to inquiries as to why they did not renew. And they certainly do not respond to inquiries as to what information they had as to why or how the negotiated lower rates, or chose not to renew. Moreover, it would harm VistaJet's business further to subpoena these customers to force them to respond, and many of the customers that FCA disclosed VistaJet's confidential commercial terms to are in foreign countries immune from US federal court subpoena power.

Moreover, it is highly likely that VistaJet competitors, who received a copy of the Brochure or otherwise learned about the confidential terms of VistaJet's agreement with Softbank, used VistaJet's special pricing and program conditions to negotiate their own deals and acquire new

---

[2] Here, the damage is far worse because the lower prices exposed to the market were not from cheap knock offs but were VJ's own lower program prices, which FCA's CEO admitted are always confidential.

clients or renew with their existing clients, to the detriment of VistaJet's business. These damages also could range in the tens of millions of dollars and VistaJet will continue to suffer those damages for years to come. Even the loss of a few business opportunities represents tens of millions of dollars in damages. Once again, it is impossible to ascertain these damages as none of the competitors who used the wrongfully disclosed information to compete will cooperate.

In light of the grave but unascertainable damages VistaJet is suffering, the suspension of flight services, and the reduction of flight hours during the pendency of an Event of Default – including an Event of Default that a) FCA failed to seek to cure, and b) it turns out after FCA hiding the extent of the breach for six months appears that it cannot be cured – bears a very reasonable relationship to damages VistaJet has, or is likely to, suffer but which are not ascertainable or quantifiable.

For its Trademark and Copyright Infringement claims (Counts III, IV and VI) and Unjust Enrichment claim (Count V), VistaJet is entitled to the disgorgement of FCA's ill-gotten profits and gains attributable to FCA's infringing activity and unfair and deceptive acts (the amount is yet to be determined) as well as harm to VistaJet's business reputation. The bases of these claims rest upon (i) FCA's unlawful and unauthorized use of VistaJet's trademarks and photographs in connection with the marketing, advertising, offering for sale, and sale of FCA's air charter services, flight administration and management services (ii) to create the false impression in the relevant market for aviation services that VistaJet partnered with FCA, that FCA's "Insight Card" is part of VistaJet's services or is sponsored, licensed, endorsed, or approved by VistaJet, and/or that VistaJet vouched for the quality of its goods and services that VistaJet does not oversee or control. The documents evidencing FCA's profits and gains are in FCA's possession and not yet produced to VistaJet. In light of FCA's knowing and willful infringement of VistaJet's

8

trademarks, this an exceptional case and VistaJet is also entitled to its reasonable attorneys' fees as the prevailing party under 15 U.S.C. § 1117(a).

In addition to FCA's profits attributable to its copyright infringement, VistaJet is also entitled to recover the actual damages it has suffered in the form of lost licensing fees for the five infringed photographs FCA reproduced and distributed without authorization under 17 U.S.C. § 504(b). The lost licensing fees are at least $1,375 per infringed photograph, i.e., at least $6,875 for the five photographs in total. This amount is the **minimum** fair market value of FCA's use of VistaJet's photographs in a brochure distributed in marketing emails based on fees charged by Getty Images for commercially licensing such use of similar photographs for a period of six months. *See Juliff v. Headout Inc.*, No. 20 Civ. 669 (JPC), 2021 WL 3887764 at *2–4 (S.D.N.Y. Aug. 31, 2021) (noting that "the Court may look to the fees charged by regular participants in the media licensing market" to determine the fair market value a copyright owner was entitled to charge for the defendant's infringing use and that "courts have regularly relied upon Getty Images," and applying the price calculator tool on Getty Image's website to determine a photograph's market value). Given that certain documents supporting the above damages are in FCA's possession and have not yet been produced, VistaJet reserves its right to supplement this response as discovery progresses.

**INTERROGATORY NO. 2**: State or identify (i) all Persons who were purportedly confused or deceived as to the origin or source of FCA's services, as alleged in paragraph 69 of VistaJet's Counterclaim, (ii) all Persons with knowledge regarding any actual or potential confusion or deception allegedly caused by FCA, (iii) all Documents or Communications regarding or evidencing any actual or potential confusion or deception allegedly caused by FCA and (iv) all Documents and Communications evidencing any likelihood of confusion as alleged in paragraph 40 of the Counterclaim.

**ANSWER:**

At least the following individuals and companies have been confused and deceived by FCA's unlawful use of VistaJet trademarks, copyright, and confidential information:

    i.    Chon Taylor from the Dalio Family Office ("DFO").

    ii.    Air Partner.

    iii.    QIPCO.

    iv.    Jason Firestone from PRVT Inc.

    v.    James Jones from PRVT Inc.

    vi.    Scott Stuart of Sage View Capital (FCA004718).

    vii.    Alyssa Heisten of 651 Management (FCA004673).

    viii.    DFO/Marino Management (FCA002572; FCA000302 & FCA000286).

    ix.    Kimberly Davis and Paul Hensley of Holt CAT (FCA028580).

    x.    Jason Maurin of Louisiana CAT (FCA028555).

    xi.    Silver Air (FCA002135).

    xii.    OGARAJETS (FCA002232).

    xiii.    Leading Edge Aviation Solutions (FCA002189).

    xiv.    Boston JetSearch (FCA002409).

    xv.    Patrick Carney (FCA021023).

    xvi.    Troy Taylor from Cardinal System (FCA028347).

xvii. Sales Force (FCA004569).

xviii. Brad Harris from Dallas Jet (FCA001912; FCA001894 & FCA001997).

xix. Frank Vento from Bombardier (FCA021663).

xx. Coca-Cola (FCA005309).

xxi. David Riddle from Vulcan (FCA004142).

xxii. Milton Hobbs from JP Morgan (FCA028224).

xxiii. John Donofrio from JP Morgan (FCA028197).

xxiv. Brian Olson (FCA001359).

xxv. Joel Gregory from Landmark properties (FCA029854).

xxvi. Gentle Creek Country Club (FCA028053).

xxvii. Michael Smith (FCA021514 & FCA004298).

xxviii. Ben Brunton (FCA027867).

xxix. Yonel Osman (FCA031432).

xxx. Craig Ross - CEO of Aviation Portfolio - and his client, Mr. Phelan (FCA003842).

xxxi. Mark Green from Volanteus (FCA020867).

xxxii. Graham from Kyndryl (FCA027882).

xxxiii. Natalie Baragwanath (FCA031180).

xxxiv. Robina Latham, CEO of MU VISION (FCA029546).

xxxv. Robert Mintz from Euro Fresh Foods (FCA031143).

The list provided in response to this interrogatory is not exhaustive. The identities of all persons and entities that were confused and deceived by FCA's unlawful marketing Brochure are currently unknown, and VistaJet is yet to learn their identities as discovery progresses. FCA sent copies of its unlawful Brochure to several aviation brokers and other third parties, who then

disseminated the Brochure to their clients and potentially to other industry players, making it nearly impossible to determine, at this stage, the identities of each of the individuals and companies that were confused by FCA's unlawful actions.

At least the following individuals have knowledge of customer confusion, as disclosed by VistaJet in its Amended Initial Disclosures:

    i.      David Lawrence from Jet Edge.

    ii.     Brian Goldfeder from VistaJet.

    iii.    Ian Moore from VistaJet.

    iv.    Leona Qi from VistaJet.

Again, the list of persons with knowledge of customer confusion provided in response to this interrogatory is not exhaustive. The identities of all persons that possess knowledge of customer confusion are currently unknown, and VistaJet is yet to learn their identities as discovery progresses. FCA sent copies of its unlawful Brochure to several aviation brokers and other third parties, who then disseminated the Brochure to their clients and potentially to other industry players, making it nearly impossible to determine, at this stage, the identities of all individuals that possess knowledge of customer confusion due to FCA's unlawful actions.

Dated: March 3, 2023.

           **AXS LAW GROUP, PLLC**
           2121 NW 2nd Avenue, Suite 201
           Miami, FL 33127
           Tel:  305.297.1878

           By:  */s/ Jeffrey W. Gutchess*
           Jeffrey W. Gutchess
           jeff@axslawgroup.com
           Bernardo N. de Mello Franco
           bernardo@axslawgroup.com
           eservice@axslawgroup.com

           and

           **FISH & RICHARDSON P.C.**
           Vivian Cheng (VC6321)
           cheng@fr.com
           Kristen McCallion (KM5593)
           mccallion@fr.com
           7 Times Square
           20th Floor
           New York, NY 10036
           Tel: (212) 765-5070
           Fax: (212) 258-2291

           *Attorneys for Defendant / Counter-Plaintiff*
           *VistaJet US Inc.*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the forgoing was served via CM/ECF on counsel of record of in this action on this 3rd day of March, 2023.

           */s/ Jeffrey W. Gutchess*
           Jeffrey W. Gutchess

VERIFICATION

I, Leona Qi, am President of VistaJet US, Inc. I am the agent of VistaJet US Inc. for the purposes of answering Plaintiff Pioneer Business Services, LLC d/b/a Four Corners Aviation Services' First Set of Interrogatories. I have read the foregoing interrogatories and the answers to those interrogatories, which are true according to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct.

Dated this 3rd day of March 2023.

DocuSigned by:

*Leona Qi*

5E85523C9A414D6...